Merrimack,
Jan. 7, 1941. } No. 3200.

STATE *v.* WILLIAM W. FROST & *a.*

*Frank R. Kenison*, Assistant Attorney-General, for the State.

*Dudley W. Orr*, for the defendants.

ALLEN, C. J. The inquiry whether upon a trial a verdict of not guilty should be directed if a motion for such direction should be made, is not one properly submitted. It is based upon an assumed situation and seeks ascertainment of the merits of a motion only planned to be presented. Upon the present state of the case it cannot aid the trial court in the discharge of its present duties to answer the inquiry. *Lachance* v. *Dondero, ante*, 157 and cases cited. But the parties have agreed that on a trial only the facts already established would be proved, and it is desirable to avoid a trial if it is bound to be a futile and useless prosecution. If the inquiry were whether the trial court should advise the State's attorney to enter a *nolle prosequi* in the case upon the established facts as the only ones to be proved, the question of their sufficiency to validate a verdict of guilty would be fairly presented. The case may thus be treated since in this respect it raises only "inconsequential matters of form" (*Tirrell* v. *Johnston*, 86 N. H. 530, 532). The inquiry thus modified calls for answer before answering the inquiry whether the information should be quashed. The statute alleged to be violated is to be construed before its constitutionality is passed upon. The information sets forth an offense if the statute is valid, and the preliminary inquiry whether upon the facts estab-

lished the defendants may be found guilty, assuming the validity of the statute, depends upon its construction. The modified inquiry presents the issue of construction.

The Bonded Warehouses Act was first enacted in 1917. Laws 1917, c. 182. It was reënacted without change in the revision of public laws in 1926. P. L., c. 169. In 1937, by Laws 1937, c. 90, it was amended by providing that anyone "who keeps and maintains a warehouse for the storage of goods, wares and merchandise ... for hire shall be a public warehouseman," and must obtain an annual license from the State. *Ib.*, s. 1. Another amendment greatly lessens the penalty for violation. *Ib.*, s. 2.

The 1917 act was passed in the practical need of uniform laws on the subject of warehouse receipts. It conforms with the code now generally in force throughout the country in its general purpose and scheme. Basically the code is designed as a facility in aid of trade and commerce, and it accomplishes the aid by its provisions for the negotiability of warehouse receipts with definite and uniform rights and security. "The business of storing goods for hire is one of great importance and the receipts of warehousemen given to bailors on the storage of goods have great importance as mercantile symbols of the property which they represent. . . . In the main this statute enacts rules of the common law except that it gives a degree of negotiability to receipts made out to the order of the bailee [? bailor] beyond that which is given by the common law." Williston, Contracts (1st *ed.*), s. 1045.

The local act, while making negotiability of receipts its main objective, is not confined in application to receipts of such character. By it (s. 5) a warehouseman "shall give to each person who deposits property with him for storage a receipt therefor, which shall be negotiable in form" and shall describe and state various specified matters relative to the property; "or, upon request, he shall give a similar receipt, non-negotiable in form," with the words Not Negotiable plainly appearing on its face. Transfer of title to property stored under a receipt is by the act (s. 6) regulated by the Sale of Goods Act (P. L., c. 166). By this latter act a receipt in negotiable form, although marked non-negotiable, is nevertheless a negotiable document (s. 30), but if it is not negotiable in form, a transferee acquires no rights additional to those of the transferor (ss. 31, 34).

If the 1937 act were construed without reference to the part of the Bonded Warehouses Act which it does not amend, it would seem doubtful if the defendants are within its terms. In substance it

provides that anyone engaging in the business of storing "goods, wares and merchandise" in a warehouse for hire must be licensed annually. The recital that such a person shall be a "public" warehouseman seems a superfluous and meaningless designation. It is not intended that the business shall be a public utility with obligation to serve all who come for reasonable charges and without discrimination. Regulation is limited to that specifically prescribed, and there would be no lessened regulation if the designation were omitted.

If the storeroom of the defendants may be regarded as a warehouse, and if their storage business may be regarded as that of a warehouseman notwithstanding that it has subsidiary standing of incidental connection with their main business of cleaning, it is a close and difficult question whether the articles they store are within the statutory meaning of goods, wares and merchandise. If goods, clearly including wares and merchandise, is meant comprehensively to include other articles, it would seem that the words wares and merchandise serve no useful purpose of description. If, however, they signify the kind of goods to which the act relates, then furs and winter garments such as the defendants store are not to be classified as wares and merchandise. Belonging to their owners for personal use, usually specially fitted for an owner to wear, usually having had some wear, stored for hire until use is begun or resumed, rarely intended for sale, and having a market value greatly less than the value to the owner, they peculiarly lack the mercantile characteristics of property which is a subject of trade and commerce, as denoted by the expression goods and merchandise.

Historically the expression of goods, wares and merchandise appears to have had its origin in the statute of frauds. In construction of that statute the expression is held broad enough to include all forms of tangible personalty and, in most jurisdictions, of intangible personalty, although not locally (*Whittemore* v. *Gibbs*, 24 N. H. 484, 488) until the enactment of the Sale of Goods Act in 1923. But clearly the expression as employed in the Bonded Warehouses Act has a narrower meaning. Intangibles and animate personalty cannot from their nature be stored in a warehouse. Other personal property is by common understanding excluded. Motor vehicles when stored in a garage are not regarded as goods, wares and merchandise stored in a warehouse, at least when the storage is transient and temporary. Nor is an auctioneer who stores goods until their sale at his place of business where he conducts sales ordinarily re-

garded as a warehouseman, even if he makes a storage as well as selling charge.

The expression is thus one of flexible meaning and is to be construed with reference to the subject-matter and context of legislation in which it appears. Whatever may be the exact dividing line between tangible personalty which is and which is not goods, wares and merchandise, as the expression is used in the 1937 act considered by itself, yet when it is viewed in the light of the Bonded Warehouses Act as an entirety and of which the 1937 act is but a part, it is thought that such articles as are stored by the defendants in the manner their business is conducted are not goods, wares and merchandise within the scope of the act so as to place the defendants in the category of warehousemen to whom the act applies.

The purpose of the act being to advance the public welfare in the subjects of trade and commerce, negotiable receipts are to be issued when they will smooth the flow of mercantile business. When a bailee does no storage business in which the public welfare will be thus served, he does not bring himself within the range of a law requiring such receipts.

The reason for the exception in the act by which a non-negotiable receipt is to be issued when specially requested by the bailor is to permit warehouse storage on special terms departing from the standard methods and conduct of the warehouseman's regular business. The storage is supplementary, but not ancillary, to that for which negotiable receipts are given, and does not in and of itself constitute the bailee a statutory warehouseman. It is a form of business allowed for the accommodation of special customers, and the warehouseman may engage in it as a privilege of his status, but it does not serve to determine the status. Only if he stores property of a kind that trade and commerce will be subserved by the issuance of negotiable receipts for it, is he within its reach.

It is asserted that a purpose obtains in the act to prevent fraud or loss in the range of storage in general, and the requirement of a bond is pointed out in support of the assertion. But the requirement is clearly designed to aid in the negotiability of receipts by the guaranty of credit thereby given them. While the bond protects non-negotiable receipts as well, this fact is a derivative circumstance, and the requirement for it indicates no purpose of security for all kinds of storage. It is designed to protect all receipts issued by a warehouseman subject to the act, but it does not show that all storage, whoever the bailee, shall be thus protected. The act, except in its provision

for negotiable receipts, adds but little to the common-law duties and liabilities of warehousemen. It does not go so far as to forbid all storage for hire unless the bailee's financial responsibility is furnished by the bond.

The meaning and scope of the act as thus construed makes unnecessary any consideration of it in its constitutional aspects.

The trial court has the duty to advise the prosecutor to enter a *nolle prosequi*.

*Case discharged.*

All concurred.